MATTHEW CLARKSON *v.* WILLIAM SKIDMORE, Ex r, etc., et al.

A lessee for years of mortgaged premises, holding under a lease containing a covenant of quiet enjoyment, upon foreclosure and sale under the mortgage, is entitled to receive, out of the surplus moneys, the value of the use of the premises for the remainder of his term, less the rents reserved and other payments to be made by him under the lease.

By being made a party to the foreclosure suit, he is not concluded as to the value of the fee, by the amount the premises brought at the sale; nor is he limited to a per centage thereon in fixing the rental value. The right granted to the lessee by the lease is an interest in the premises, capable of being sold and transferred, and has precedence of the estate of the lessor, and is an encumbrance upon the land to the extent of the lessor's interest. The lessee, having this right of priority over the lessor, is interested only, in seeing that the property produces sufficient to cover his interest. He has no interest or duty to create a fund for the benefit of the lessor; and if the premises are sold at less than their value, the loss must fall upon the latter.

As between the lessor and lessee, the estate of the latter is not subject to the claims of the mortgagee, or to any other encumbrance or claim upon the premises. They are charges upon the interest of the lessor only, who is bound to protect the estate of the lessee therefrom.

The effect of the sale is to substitute the proceeds, as far as they will go, for the several interests in the premises sold, and such interests are to be satisfied out of the proceeds in their order of priority. Equity will not permit one claimant of the fund, who has covenanted to protect the title of another, to increase his own share of the fund, by compelling the other to contribute to the discharge of prior encumbrances.

Where the parties claimant are before the court, and the contest is between them only, or those claiming under them, the court has power to make a

final disposition of the fund, in accordance with the covenants existing between them and the equities resulting therefrom.

Upon an appeal to the General Term from an order confirming the report of a referee, giving the entire surplus moneys to the executor of the lessor, the court set aside the report and referred the case back, and in the order directed, that the share of the lessee should be ascertained, by computing the value of the residue of his term in the surplus, deducting therefrom the amount of the payments to be made by him under the lease. Upon the second hearing, evidence was received, under objection on the part of the executors, as to the annual rental value of the premises. The executors, relying upon the decision of the General Term, offered no evidence thereon. — *Held*, that the executors had a right to repose upon their objections, as the case then stood, and the matter should be referred back, to give them an opportunity of adducing evidence upon the question of the value of the term.

(Argued June 21, 1871 ; decided September 11, 1871.)

APPEAL from order of the General Term of the Supreme Court, first department, affirming an order of Special Term, which denied a motion to confirm the report of a referee, as to the disposition of surplus moneys arising upon a foreclosure sale, and made other disposition thereof.

B. F. Randolph, the owner of the premises, executed to Lewis W. Phillips and Frederick C. Oakley on the 8th day of March, 1855, a lease thereof for ten years, expiring May 1st, 1865, and containing the usual full covenants, and also a covenant by said Randolph for himself, his heirs, executors, etc., to pay for the buildings erected by said Phillips and Oakley on the said premises ; which lease and all his interest therein said Oakley assigned to said Phillips.

Said Randolph executed to the plaintiff a mortgage of $25,000, recorded October 6th, 1864 ; he is dead, and the executors, the claimants, are his executors.

The wife of Randolph joined in the mortgage.

Randolph, on the 1st day of April, 1865, executed to Lewis W. Phillips a lease of the mortgaged premises for ten years, expiring May 1st, 1875 ; recorded October 13th, 1865, and containing a covenant of quiet enjoyment.

Phillips executed to William Remsen, a mortgage on his

said leasehold interest for $15,000, dated December 30th, 1867, and recorded December 31st, 1867. The interest on this has been paid up to April 1st, 1869. The principal and interest from that day are due and unpaid.

Phillips subsequently executed to Jesse Hoyt, assignee, another mortgage on his said leasehold interest for $5,000, dated October 3d, 1868, and recorded October 8th, 1868. There is now due on this mortgage the sum of $3,910$\frac{41}{100}$, and interest on $3,750 from April 3d, 1869.

The mortgage to the plaintiff was foreclosed. The usual decree of foreclosure and sale was made on the 3d day of March, 1869. The premises were sold on the 1st day of April, 1869; and the referee's deed to the purchaser was executed and delivered on the 3d day of May, 1869, and possession demanded by and delivered to the purchaser on the 3d day of May, 1869, by Phillips, who, until then, had been in possession of the premises, under his lease, from its date up to that day. Phillips, the lessee, and Remsen, his mortgagee, were both made parties in the foreclosure suit. The other parties defendant being the representatives of Randolph the mortgagor.

The premises produced at the mortgage sale the sum of $119,750; and the surplus, after paying the plaintiff's mortgage and all the expenses and the unpaid taxes on the premises, was $85,046.91, which was paid into court.

The quarter's rent due from Phillips on the 1st of May, 1869, was not paid. The taxes for two years are unpaid, and are deducted from the amount produced at the sale.

The value of the widow's dower was found to be $20,615.28, which is admitted to be the first claim on the surplus; thus leaving the balance of the surplus $64,431.63.

The claimants before the referee for the balance of the surplus, viz., $64,431.63 were the lessee Phillips and his mortgagees, Remsen and Hoyt, on the one side, and Randolph, the lessor (or his representatives), on the other.

The referee, by report dated September 13th, 1869, reported that the executors of Randolph were entitled to *the whole*

surplus, and that neither Phillips nor Remsen were entitled to any part thereof.

Phillips, Remsen, and Hoyt excepted to this report. The Special Term overruled the exceptions *pro forma*, and an appeal was taken to the General Term of the Supreme Court.

The Supreme Court at a General Term reversed the order of the Special Term, and allowed the exceptions of the defendants, Phillips, Remsen, and Hoyt, and referred it back to the referee to find the value of their claims, with directions to take the amount the premises brought at the foreclosure sale as the value of the fee; and upon that basis, estimate the value of the unexpired term, without resorting to the opinions of witnesses upon that question. (This decision is reported in 2 Lansing, 238.)

Upon the second hearing before the referee, witnesses on behalf of Phillips testified as to the value of the unexpired term. This testimony was objected to by the counsel for Skidmore.

The referee found the value of Phillips interest for the remainder of the unexpired term of his lease, subject to the claims of Remsen and Hoyt, and certain rent and taxes due Skidmore as executor, to be $42,221.29.

That the claimant Phillips, by reason of his lease, and Remsen and Hoyt, by reason of the mortgages to them, have liens on the said surplus moneys, and have priority over every other lien, and that payment of the aforesaid value of Phillips' interest should be made to him, after payment therefrom of the rent and taxes then due said Skidmore as executor, and after payment of the claims of Remsen and Hoyt; and that the claimant, Skidmore, was entitled to the balance of the surplus moneys. The Special Term refused to confirm the report, but granted an order finding the value of Phillips' interest, by taking the amount the premises brought on foreclosure sale, and calculating, six per cent per annum thereon, deducting the annual rent and taxes agreed to be paid by the lease.

*W. Fullerton* and *S. Hand,* for S. W. Phillips, lessee, and for W. Remsen and Jesse Hoyt, mortgagees of lessees. The lessee had an estate in the lands. (1 R. S., Edward's ed., 714, § 36 ; *Burr* v. *Bryan,* Court of Appeals; *Averill* v. *Taylor,* 4 Seld., 42.) His interest in the surplus is the value of his unexpired term. (*Mack* v. *Patchin,* 42 N. Y., 167 ; *Chatterton* v. *Foy,* 5 Duer., 64 ; *Smith* v. *Taylor,* 8 N. Y., 44 ; *Matthewson* v. *Duryee,* 45 Barb., 69 ; *Denniston* v. St. P. Ch., 2 Bos. Ch., 555 ; *Livingston* v. *Weldnum,* 19 N. Y., 440 ; *Arnot* v. *Amdon,* 4 Hill, 345.)

*J. M. Van Cott* and *W. E. Curtis,* for William S. Skidmore, executor, etc. The foreclosure sale ended the term. As to the unexpired term, the lessee's rights rested merely in executory contract. (Bac. Ab., tit. Lease, vol. 4, p. 1 *et seq. ;* 2 Bl. Com., 140 ; id., 386 ; 4 Kent's Com., 35 ; Austin's Lect. on Jurisp., 49th, vol. 3, p. 15 ; *Burr* v. *Stenton,* 52 Barb., 377.) The lease was simply a lien on the equity of redemption, and entitles lessee only to proportionate share in surplus. (*Swaine* v. *Perine,* 5 Johns. Ch., 482 ; *Hawley* v. *Bradford,* 9 Paige, 201 ; *Bank of Commerce* v. *Owens,* 31 Md., 320 ; *Burr* v. *Stanton,* 52 Barb., 377 ; S. C., in Court of Appeals, *sub nom. Burr* v. *Bryan.*) The covenant of quiet enjoyment was conditional on payment of rent; this condition having been broken, the lessor was not bound to protect the lessee's possession. (*Ireland* v. *Bircham,* 29 E. C. L. R., 266 ; *Coward* v. *Gregory,* L. R., 2 C. Pl., 153, 172 ; *Neale* v. *Ratcliffe,* 69 E. C. L. R., 916.)

RAPALLO, J. The surplus moneys in controversy belong to the parties who had estates or interests in the land sold, which were cut off by the sale. The real estate having been converted into money, the several parties were entitled to be paid, out of the fund, the equivalent of their respective interests, in the order of their priorities as between each other. After the satisfaction of the mortgage debt, which was the first lien, the claimants were, first, the widow of the mortgagor, in

respect of her right of dower; secondly, the lessee of the mortgagor, and the mortgagees claiming under such lessee; and thirdly, the executor of the mortgagor and lessor, who was entitled to the residuum, whatever it might be.

The value of the widow's right of dower has been ascertained, and no question is raised as to the amount to which she was entitled. The claims of the mortgagees of the lessee, depend upon the valuation of the interest of the lessee, and must be satisfied out of the sum to be set apart in respect of that interest, so far as it may go.

They need not, therefore, be separately considered. The controversy is thus reduced to the apportionment to be made between the lessee and the executor of the lessor, of the fund still remaining in court. That the lessee had an estate in the land, is too clear to admit of discussion. (See *Burr* v. *Bryan*, decided January, 1871; *Averill* v. *Taylor*, 4 Seld., 44.) And it is equally plain, that his claim to compensation for the value of this estate, has precedence of that of his lessor from whom the estate was derived. But the determination of the principles, upon which the value of this estate for years is to be ascertained, involves questions of considerable difficulty and importance.

The lessee, as between himself and his lessor, had a right to the possession and enjoyment of the whole of the premises, during the residue of the term of his lease, being six years, subject only to the payment of the rent reserved in the lease and of the annual taxes which he had agreed to pay. This right had been conveyed to him by the lessor with a covenant of quiet enjoyment; and he had thus become entitled to the benefit, during that term, of the increase in the value of the occupation of the premises, and to whatever difference existed between the value of the use thereof, and the annual rent and taxes agreed to be paid therefor. He had, in fact, contributed to such increase of annual value, by expenditures for improvements made by him on the premises, after the commencement of his term. To the extent of the value of the rights thus vested in the lessee, the lessor had, by giving the lease, dimin-

ished the value of his own estate. He had parted with and transferred to his lessee, the right of occupation for a term of years, and remained entitled only to the rent reserved and the reversion subject to the mortgage.

If the rent reserved in the lease was equal to, or more, than the annual value of the premises, then the estate of the lessee was manifestly worthless; but if, on the contrary, as appears to have been the fact, the annual value of the property was much greater than the rent reserved in the lease, the estate of the lessee was of importance, and a serious incum-brance on that of the lessor; and the lessee is entitled to receive its equivalent out of the surplus of the proceeds. Witnesses were introduced before the referee, to prove the amount for which the premises were let after the sale, and what was their fair rental; but the court below held that such evidence should not be resorted to, but that the sum which the premises brought at the sale, should be taken as the value of the fee and interest thereon at six per cent, as the annual value or rental. The value of the fee may be an element to be taken into consideration in determining the value of the rental; but it cannot be uniformly adopted as the only legal basis of calculation, nor can a uniform per centage upon such value be fixed upon, as a fair rental for all classes of property and under all circumstances. Unimproved lands are generally let even for long terms at a much lower rate, in proportion to the value of the fee, than buildings, which are constantly undergoing deterioration and decay. A tenant often erects improvements upon leased property at his own risk and expense, relying, and with safety, upon obtaining reimbursement by means of the increased annual value thus imparted to the property, which he will enjoy during his term. To award to him, as the equivalent of his term, simply interest upon the value of the fee of the land and improvements, would clearly do him injustice. While, on the other hand, a tenant for a short term of unimproved city lots, which, in their undeveloped condition, would command but a trifling annual rent, would, by being allowed interest on their actual value, receive much more than

he was entitled *to*, and the owner of the reversion would suffer.

The value of the term must depend upon the circumstances of every individual case; the length of the term and conditions of the lease, the character of the property, its location, the readiness with which it may be let, the condition of the buildings, whether substantial and durable, or requiring frequent repairs, the uniformity of rents in the neighborhood or their fluctuating character; in short, every material consideration which would enter into the mind of a purchaser of the term, in judging what would be a fair price for it, and, like other ordinary questions of value, should be determined, as a matter of fact, upon the testimony of witnesses competent to speak upon the subject.

In so far as the value of the fee may properly enter into the calculation, the amount which the premises brought at a fair sale by auction, may be competent evidence upon that point. But it cannot be said to be conclusive, even upon parties to the action in which the sale was made, except as between those parties whose interests are in common. Where one party is entitled to priority over the other, it should not be deemed conclusive. The party having such right of priority, is interested only in seeing that the property produces sufficient to cover his demand; and when that object is accomplished he may well refrain from further efforts, though the result be that the property is struck off for less than its value. The loss then falls upon those whose rights are subsequent to his. The lessee in this case was interested in seeing that the premises produced a sum sufficient, after paying all prior charges, to compensate him for the value of his lease; but he had no interest or duty to create a surplus beyond that, for the benefit of his lessor. Nor did his right, nor the value of his term, depend upon the amount the premises should bring at the sale. He should not, therefore, be concluded by it. As between the lessor and lessee, the lessee did not hold, subject to any agreement or condition, express or implied, that the land might be converted into money, or to the right of any

person so to convert it.   The lessor had granted to the lessee, the right of occupation of the land for a specified term, and covenanted that he should quietly enjoy it.   This right had a value capable of ascertainment.   It was an interest in the land, and was capable of being sold and transferred.   It had precedence of the estate of the lessor, and was an encumbrance upon the land to the extent of the lessor's interest. If the lessor had desired to sell, he would have been obliged to rebate from the price the value of that incumbrance, as well as the amount due on the mortgage.   Now, when the premises were sold to satisfy the debt of the lessor, and the sale divested the title both of the lessor and lessee, there is no reason why the amount which the lessee is to receive, as the equivalent of the estate of which he has thus been divested, should depend upon the amount produced by the sale, so long as it left a surplus sufficient to compensate him for the value of his term.   If the premises brought their full value, the proceeds would necessarily be sufficient to pay the value, both of the term and the reversion.   But if they brought less than their value, the loss should fall on the reversioner, whose estate is subject to the lease.   This view is consistent with the position, that the lessee in claiming payment out of the surplus moneys of the value of his term, is following the proceeds of his estate, and not demanding damages for the breach of the covenant of the lessor.   His claim is limited to the surplus moneys.   If they are insufficient, he can obtain no further redress.   But to the extent of the value of his term, they must be deemed the proceeds of his term, because of its priority over the estate of the lessor.   The lessor has granted an interest in the land, which can only be measured by valuation when the land is converted into money. And that interest takes precedence of his own estate.   To make a good title to the purchaser at the sale, that interest must be extinguished.   And for the purpose of extinguishing it, the lessee is made a party to the action, and his estate is embraced in the sale.   The purchase money must be deemed to be paid, for the estates or interests sold, in the order of their

priorities, though the result be, as frequently happens, that the owner of the ultimate fee gets nothing. That result may follow from the owner having encumbered his estate to more than its value, or from the property being sacrificed at a forced sale. The case would have been different if, instead of granting an estate in the whole of the land, the owner had granted, in fee, an undivided share of the land. In that case his grantee could only claim a corresponding share of the proceeds, and the grantor would be entitled to the proceeds of the share he had retained, for they were in no wise subjected to any right of the grantee of the share sold. But here he has subjected his whole estate to the rights of the lessee; and, therefore, must be postponed until the claim of the latter is satisfied. The claim made on behalf of the executor, that the estate of the lessee was subject to the mortgage and dower right, and that, therefore, the lessee is entitled only to the difference between the rent reserved in the lease, and the interest of the surplus moneys (after deducting the mortgage debt and the value of the widow's dower), during his unexpired term, is wholly untenable. It is true, that as between the lessee and the mortgagee, and doweress, his estate was subject to their claims. But as between him and his lessor it was not. Between the lessor and the lessee these were charges on the interest of the lessor only. He had granted the term and covenanted for the quiet enjoyment of the whole premises during that term. He was, therefore, bound to protect the estate of his lessee against those claims. So much of the proceeds of sale as have been used to satisfy the mortgage, have been applied to the debt of the lessor, or to the satisfaction of a charge on his estate; and his representatives have had the benefit of them in that manner. So long as the mortgage existed, it was necessary to devote a portion of the rent to the payment of interest. The lessor loses nothing, therefore, by the payment of the principal out of the fund. The payment to the doweress is also properly payable out of the moneys which the heirs of the lessor would have received had there been no widow, and should not be taken into

account in considering the rights of the lessee. Even if interest on the proceeds represented the value of the rental, it would be manifestly unreasonable to hold, that for the purpose of computing the interest of the lessee, he should be allowed only the interest of the surplus, remaining after nearly one-half of the proceeds had been consumed in satisfying these claims, and still be charged with the rent which he had covenanted to pay for the whole of the premises. The burden of the claims which, as between the lessor and lessee, the former was bound to provide for, would thus be transferred to the latter. There is no soundness in the position claimed. The effect of the sale was to substitute the proceeds, so far as they would go, for the several interests in the land sold, but not to change the relative interests of the parties, or their priorities; and neither of them is entitled, out of the proceeds, to more than the equivalent of what he would have enjoyed had the sale not taken place. As between the lessor and lessee, the amount necessary to satisfy the mortgage was always chargeable to the lessor, and continues so notwithstanding the sale. It has gone to pay his debt and the effect is the same as if awarded to him directly out of the fund.

The value of the widow's dower is in like manner, as between the heirs of the lessor and the lessee, chargeable wholly to the former.

By his covenant of quiet enjoyment, the lessor, and those claiming under him, are precluded from setting up this right of dower, for the purpose of reducing the value of the estate conveyed by him to the lessee, and relieving his own estate from that incumbrance. He or his representatives cannot be permitted to allege that the lessee was entitled by the lease, to the enjoyment of only two-thirds of the premises, in the face of his covenant that he should enjoy the whole. Whatever payment was necessary, to extinguish this outstanding right of dower, should be borne by the representatives of the lessor, not by the lessee. The objection that the covenant of quiet enjoyment cannot be enforced in this proceeding, is not available, nor are the rules which would govern an action for the

breach of such a covenant applicable, where the controversy arises, as it does here, between the covenantor and covenantee as claimants in a court of equity of the same fund, and the covenant determines at whose expense, charges or incumbrances on the fund ought to be satisfied. Suppose that an undivided half of a piece of land be conveyed by A to B, with a covenant of warranty and against incumbrances, and it turns out that the land is subject to a mortgage. Can it be doubted that, upon a contest between A and B as to the surplus, arising from the sale of the land under said mortgage, B would be entitled to the surplus, to the extent of the full half of the entire proceeds of sale, though nothing should be left for A, and though the half of the proceeds were more than the consideration paid by B to A, with interest? Could A be permitted to set up, in the face of his covenant, that the interest of B, as well as his own, was subject to the mortgage, or that B was restricted to the damages recoverable upon the covenants in the deed of A? Or, suppose that the conveyance had been made subject to the mortgage, with covenants against other incumbrances, but the wife of A had not joined in the deed, and A had died; is it not clear that, as between B and the heirs of A, the sum to be set apart for the right of dower of the widow of A, should come out of their half of the surplus moneys, and that no part of it should be taken from that of B? In such cases, recourse may be had to the covenants between the parties, for the purpose of determining their equities as between each other. When two parties are claimants of a fund in court, equity should not permit one of them, who has covenanted to protect the title of the other, to increase his own share of the fund, by compelling the share of the party whose estate he has covenanted to protect, to contribute to the discharge of prior encumbrances on the property. I can see no possible objection, when both parties are before the court as claimants, and the contest is between them only, or between parties claiming under them, to making a final disposition of the fund, in accordance with the covenants existing between them, and

the equities resulting therefrom. The decision in the case of *Burr* v. *Bryan*, turned upon the point that the lessor, at the time of executing the lease, had no title to the property, and that the lease contained no express covenant of quiet enjoyment, but did contain a covenant against the acts of the lessor, which excluded the implied covenant of quiet enjoyment, which would otherwise have existed; that, therefore, the lessee had no estate in the land, and the lessor had made no covenant which precluded him from setting up a title in himself, acquired subsequently to the lease. The case was a peculiar one, and the judgment therein does not conflict with the views here expressed.

On the hearing before the referee, in pursuance of the order of the General Term, setting aside his first report and referring the case back, evidence was given as to the fair annual rental of the property, for the purpose of establishing the value of the term. This was objected to by the counsel for the executors, as not being in conformity with the decision of the court at General Term. That objection was overruled, but the counsel for the executors seems to have reposed upon it, and not to have offered any evidence on his part on the subject of value, further than computations based on the proceeds of sale. We think he had a right to repose upon that objection, as the case then stood. The court had decided that the proceeds of the sale should be taken as the value of the fee, and that the opinions of witnesses, as to a value of the term, should not be resorted to, if the value could be ascertained by calculation on that assumption; and the referee was, by the order, directed to report according to the views expressed in the opinion of the court. The executors should have an opportunity of adducing evidence on the question of the value of the term, on a hearing on which that question is properly triable as a question of fact. We do not, therefore, think that the valuation found by the referee in his report dated June 21, 1870, should be adopted; but the order of the Special Term dated September 27, 1870, and of the General Term dated April 26, 1871, should be reversed, and it should

be referred back to the referee, to ascertain the value of the term, according to the views herein expressed, and to report upon the matters referred to him by the original order of reference.

All concur, except GROVER, J. dissenting, and ALLEN, J., not voting.

Ordered accordingly.