Marshall E. Livingston, J.
This controversy has been submitted on an agreed statement of facts and a stipulation by counsel as to additional facts requested by me, pursuant to CPLR 3222.
The background against which this controversy arises is clear and uncomplicated. In December of 1965 the plaintiff, Airport Lodge of Rochester, Inc., as tenant, and the defendant, BrooksBuell, Inc., as landlord, entered into a written 99-year lease beginning January 1, 1966 and ending December 31, 2064. The lease provides for an annual net rental of $16,000, payable in monthly installments of $1,333.33. The tenant pays all taxes and assessments.
The premises, containing approximately seven acres of land, are located on the northeast corner of the intersection of Brooks Avenue and Buell Road opposite Monroe 'County Airport. Brooks Avenue at this point is also New York State Highway Route 47 and connects with Route 490, a high-speed limited access highway through the City of Rochester, New York.
In October of 1966 the State of New York appropriated a 10-foot strip of land comprising all the Brooks Avenue frontage of the property for a distance of 367.16 feet. As a result of this taking, the parties are now deprived of all direct access *237 to Brooks Avenue from the premises, except from Buell Road.
The parties’ claim against the State was compromised for the sum of $78,800, plus accrued interest. This sum is now in an interest-bearing escrow account being held pending allocation of the money between the parties.
The matter of the apportionment of the settlement, pursuant to the terms of the lease, was submitted to two arbitrators, one appointed by the plaintiff and one by the defendant. Since the arbitrators are not in agreement, the arbitration provision in the lease has been waived and the arbitrable matters in issue have been stipulated to be decided by me, pursuant to CPLR 3222.
The controversy submitted, according to the statement of facts, ‘ ‘ is the apportionment, payment and/or distribution of the allocation of the condemnation award between the plaintiff and the defendant herein with such legal interpretation of the lease as may be required by the Court in making the apportionment, payment and/or distribution of the allocation”. In substance, the sole question is an equitable division of the proceeds between the parties.
This matter, although governed procedurally by CPLR 3222, is also affected by section 30 of the Highway Law, section 22 of the Condemnation Law, and section 968 of the Real Property Actions and Proceedings Law.
Section 30 of the Highway Law furnishes substantive authorization for the appropriation of the parcel and the subsequent compromise or adjustment of the claim by the Superintendent of Public Works and the parties for $78,800.
Section 22 of the Condemnation Law authorizes the court, where there are adverse and conflicting claims to the money, to determine who is entitled to the same and direct to whom it shall be paid. If the property taken includes an estate for years (99 years in this case), the owner of such estate (the plaintiff here) is entitled to receive from the money paid as compensation (1) a sum in gross or (2) the earnings of a sum invested for its benefit. The section lastly provides that the determination of whether a tenant for years receives a gross sum or the earnings of a sum shall be governed by the provisions of section 968 of the Real Property Actions and Proceedings Law.
Section 968 of the Real Property Actions and Proceedings Law, although particularly concerned with partition actions, nevertheless furnishes ground rules for distributing the proceeds of an appropriation between those having an interest *238 therein (Condemnation Law, § 22; and see, also, 17 CarmodyWait 2d, New York Practice, § 108:51).
I do not believe section 401 of the Beal Property Actions and Proceedings Law applies specifically in this case. That section has to do with valuations made under the article and is limited to an interest in real property dependent as to value upon the duration of one or more lives in being, and such is not the case here. In other words, section 401 contains no provision for valuation of interests measured by years. Therefore, the interests of the parties here must be determined by other means. Section 402 of the Beal Property Actions and Proceedings Law does fix a 4% compound interest rate to be employed in valuations. This will be considered later.
The 99-year lease in question provides in clause 26 the procedure to be followed if, during the term, “ a portion of the leased premises shall be taken by appropriation for public use ”. The clause provides in part: “ In the event that only a portion of the leased premises be taken by appropriation, Lessee shall also have the right to declare this Lease terminated and null and void if, in the opinion of the Lessee, the remaining portion of the leased premises is not reasonably suitable or economically feasible for continued occupancy and use by Lessee and, upon notifying Lessor in writing of such election to terminate this Lease, Lessee shall have no further obligations under this Lease. Lessee’s right of termination shall in no way limit or diminish Lessee’s rights to a portion of the appropriation award, to be determined as above set forth. Such notice of termination is to be given not later thaii 120 days after the actual possession of a portion of the leased premises is actually taken by the appropriating authority. In the event of such a termination by Lessee, any rental then pre-paid shall be returned to Lessee and such rent shall also be equitably abated during any time Lessee continues in pos- „ session and use after such a partial appropriation. In the event of a partial appropriation and Lessee does not elect to terminate this Lease, the rent reserved hereunder shall be equitably reduced for the balance of the term to reflect the loss of use of the portion of the premises and the expenses incurred by Lessee, if any, in rendering the improvements on the premises suitable for continued use after such partial appropriation. A widening of Buell Road or BrooJcs Avenue, adjoining the premises, in an insignificant amount which does not interfere with Lessee’s operations on the premises shall not be deemed to be a ‘ partial appropriation ’ for the purposes of this paragraph” (italics supplied).
*239 Thus the tenant had two options: (1) It could terminate the lease if, in its opinion, the remaining portion of the premises was not ‘ ‘ reasonably suitable or economically feasible for continued occupancy ” and preserve its right to a portion of the award; or (2) elect not to terminate the lease, and the rent would be equitably reduced to reflect the loss of use of the premises by a “partial appropriation However, “a widening of Buell Road or Brooks Avenue, adjoining the premises, in an insignificant amount which does not interfere with Lessee’s operations on the premises shall not be deemed to be a ‘ partial appropriation ’
Even assuming arguendo that there was a “partial appropriation ” and that the tenant is bound to accept equitable reduction in rent as its share of the settlement, certainly the landlord’s suggestion of dividing $78,800 by 1174 months (97 years and 10 months remaining in the lease), and arriving at a $67.12 per month rent reduction falls short of being an equitable reduction. The annual rent reduction thus would amount to only a little more than 20% of interest earned at 5% on $78,800. To put it another way, $78,800 deposited at 5% interest, of which the landlord would receive about 4% and the tenant 1%, would mean that at the end of the term the landlord would still have the $78,800 principal intact.
The severance damage or loss in value to the property after taking 1.2% of the area resulted in a substantial compromise, but despite this, the widening of Brooks Avenue and the closing off of access for 367 feet was an amount which in the tenant’s judgment would not interfere with its operations on the premises, hence its decision not to terminate the lease. Therefore, I find, as a matter of fact, that the lessee’s decision not to terminate is, considering the long term of the lease, the $1,675,000 148-unit motel with additional facilities built by the tenant, determinative of my holding that the partial appropriation falls within the exception described in the last sentence of clause 26 of the lease.
This is further buttressed by the rule that consequential damage would problably not have been allowed here had the matter been tried (see Bopp v. State of New York, 19 N Y 2d 368; Priestly v. State of New York, 23 N Y 2d 152).
It is difficult for me to distinguish between severance damage, as it is characterized by defendant’s expert, and consequential damage in this case (see Schmutz, Condemnation Appraisal Handbook, p. 376). Cutting off access to Brooks Avenue could *240 be said to have caused damage in futuro in consequence of that act and thus the $78,800 compromise. However, under the doctrines of Bopp and Priestly (supra), the immediate access to Brooks Avenue via contiguous Buell Road would have ruled out consequential damages, and the claimants could have recovered only nominal severance damages.
The State settled the award at $78,800 and interest, which reflected the judgment of the parties as to the value of the land taken. There is no consequential damage to either party.
What is the equity of an owner against a tenant? In a short-term lease the owner certainly has a paramount interest. In a 99-year lease the reversion interest of the owner is practically nil. This is particularly so where the ground rent before improvements by the lessee is substantial over the lease period and net to the owner.
The underlying principles relating to apportionment to be made between lessor and lessee were enunciated about 100 years ago in Clarkson v. Skidmore (46 N. Y. 297, 303) when the court said: “ If the rent reserved in the lease was equal to, or more, than the annual value of the premises, then the estate of the lessee was manifestly worthless; but if, on the contrary, as appears to have been the fact, the annual value of the property was much greater than the rent reserved in the lease, the estate of the lessee was of importance, and a serious incumbrance on that of the lessor; and the lessee is entitled to receive its equivalent out of * * * the proceeds.”
In the case at bar the ground rental of net $16,000 per year for more than 95 years is by inference substantially less than the rental to be derived from the $1,675,000 motel and other facilities developed and built by the lessee on the premises (CPLR 3222, subd. [b], par. 4).
To the extent the lessee here, pursuant to its agreement in the lease, built the motel and improved the property, thus increasing manyfold the value of its 99-year lease, the lessor by giving the lease for 99 years, diminished the value of its interest in the property. By leasing the premises to the tenant for 99 years, the landlord retained only the ground rent reserved and the value of the reversion (Pekofsky v. State of New York. 15 Misc 2d 358).
The landlord’s interest in the property is the reserved rent of $16,000 for nearly 98 years, a total of about one and a half million dollars and the reversionary interest in the amount of the award of $78,800.
*241 The landlord’s security for the reserved rent throughout the term is ample. In the first place, the motel itself cost in excess of the reserved rentals for the entire period. The lease, during the term, requires the tenant to maintain the buildings in good repair, and in the event of destruction by fire or otherwise, to replace the same. In the event of a fire loss, the loss is payable to a Rochester bank as “ insurance trustee ” to insure application of the funds to reconstruct or repair. The only lien against the property is the first mortgage lien on the premises.
The present value of the landlord’s reversionary interest in the $78,800' (the price paid for the appropriated land) I computed by using the “ Table of Present Value of a Single Payment of $1 at a Future Date”. This is standard practice (see Wixon, Accountant’s Handbook, p. 29.58 [4th ed.] ; McMichaels, Appraising Manual, p. 97 [4th ed.]; American Institute of Real Estate Appraisers, The Appraisal of Real Estate, p. 440 [5th ed.]).
I used the rate of 4% compound interest primarily because it is the rate used in section 402 of the Real Property Actions and Proceedings Law in valuations under that article. I also feel that á% is a conservative figure to project some 90 years hence and thus to secure to the defendant, if it so chooses, the reversion of the principal.
I chose the date of August 31, 1971, as being the date from which to compute the period until December 31, 2064, the expiration date of the lease. This is 93 years, 4 months. The computation worked out as follows:
Present value of $1 in 93 years at 4% = .0261
$78,800 X .0261 = $2,056.68
Present value of $1 in 94 years at 4% = .0251
$78,800 X .0251 = $1,977.88
By interpolation, $2,056.68
- 1,977.88
$ 78.80 -r- year = $26.27
Therefore, the present value at 4% of $78,800, as of August 31, 1971, on December 31, 2064 is rounded out to be $2,100, which is the amount of the award to the defendant, BrooksBuell, Inc., together with accrued interest. The plaintiff, Airport Lodge of Rochester, Inc., is entitled to $76,700, together with accrued interest as its share.