## SUPREME COURT.

LEWIS BEVIER and others, Administrators, &c., of EDGAR HASBROUCK, deceased agt. HIRAM SCHOONMAKER and others.

Where a mortgagee and purchaser under a *statute foreclosure*, retains in his hands *surplus moneys* arising from the sale, after demand made by the *next oldest judgment creditor* who is apparently entitled to it, *without giving any reason* for retaining such fund, he retains it at the peril of paying *costs and interest personally*, although the mortgagor and junior judgment creditors at the same time also demand from him such surplus, claiming to be entitled thereto.

*Albany General Term, September*, 1864.

*Before* PECKHAM, MILLER *and* INGALLS, *Justices.*

APPEAL from judgment entered upon the decision of the judge at the circuit. The defendant, Hiram Schoonmaker,

purchased a mortgage in May, 1863, against one John Winfield, for the purpose of foreclosing the same, and in a few days commenced the foreclosure thereof by advertisement under the statute. The premises covered by the mortgage had been sold about a year before that, at a sheriff's sale, under execution against John Winfield, the mortgagor, and the plaintiffs in this action had become the owners of the sheriff's certificate of sale. The mortgage sale was made on the 29th day of August, 1863, and netted a surplus of $804.96.

The plaintiffs being then the owners of the equity of redemption under the sheriff's sale above mentioned, and also the owners and holders of the oldest judgment against the mortgagor, duly demanded the surplus moneys from the assignee of the mortgagee on the day of sale. The assignee refused to pay over any part of the surplus, assigning no reason for such refusal, and retained the amount in his own hands. The said surplus moneys were after the sale, and on the same day, also demanded of the assignee of mortgagee by other judgment creditors of the mortgagor, junior to the plaintiffs' judgment. On the fourth of September following, six days afterwards, the plaintiffs commenced this action, making all of the judgment creditors parties, in order that they might contest the plaintiffs' right to the money if they felt inclined to. None of the creditors appeared or defended in the action but the defendant, Hiram Schoonmaker, who held the surplus, and who served an answer, and made an issue for trial. The cause was tried before Hon. C. R. INGALLS, at the Ulster circuit court, January 19, 1864.

On the trial the defendant admitted, and the court found the fact to be, that the plaintiffs were entitled to the whole of the surplus moneys. The defendant, however, insisted that though the plaintiffs were entitled to all of said surplus money, and though he had improperly withheld it from them, and compelled them to sue for it, yet he should

not pay either costs or interest, but should be allowed costs. The court decided that the plaintiffs were entitled to their costs, and interest on their money, and judgment was entered accordingly.

The defendant appeals to this court from so much of the judgment as allows the plaintiffs costs and interest.

S. L. STEBBINS, *for appellant and defendant.*

I. The action is an equity action, as is apparent from the pleadings, decision and judgment. All the defendants were necessary parties (*Valentine* agt. *Wetherell*, 31 *Barb.* 655). Even if an action for money had and received, could have been maintained against the defendant, Hiram Schoonmaker, alone, this action as brought is an equity action. (*McCrea* agt. *Purmort*, 16 *Wend.* 460, 465, 466; *Cahoon* agt. *The Bank of Utica*, 3 *Seld.* 486; *Williams* agt. *Rogers*, 5 *Johns.* 163.)

II. On the facts in this case, Hiram Schoonmaker could have brought and maintained against the other defendants and the plaintiffs, an action in the nature of a bill of interpleader, and in such action, doubtless, would have been allowed his costs. (*Willard's Eq. Juris.* 313, &c. 321, 322; *Miller* agt. *De Peyster*, 1 *Abb.* 234.) But the moment this action was commenced, bringing in all the parties interested, there was no necessity for his commencing one, as he could ask the same relief in this, and all the questions involved could as well be decided in this. He should not be charged with costs, nor denied costs, because he did not commence an action of interpleader within six days after the surplus was created. Had the plaintiffs commenced this action against him alone, he could have applied to the court under section 122 of the Code, to substitute the other defendants in his place.

III. The defendant, Hiram Schoonmaker, was trustee, or *quasi* trustee, of the surplus moneys for the benefit of

those interested therein, and there being rival claimants, he was not only not bound to pay to either, but it was his duty to retain the fund until an action could be brought (by himself, or by one or more of the claimants), in which the rights of the parties could be determined. (*The People* agt. *Ulster C. P.* 18 *Wend.* 628; *Bleecker* agt. *Graham*, 2 *Edw.* 647.)

" The surplus moneys, after the mortgagee's claim has been fully satisfied, with the costs and expenses allowed by law, are to be paid to the mortgagor, or to his representatives.

" If there are persons having subsequent incumbrances on the premises, by mortgage or otherwise, *the mortgagee should retain the surplus in trust for the parties interested, until their rights are ascertained and adjusted*" (*Crary's N. Y. Practice*, " Foreclosure of Mortgages by Advertisement," p. 72).

" If there is any surplus money, after satisfying the claims of the mortgagee, and paying him his costs and expenses allowed by law, it belongs to the mortgagor or to his legal representatives, unless subsequent incumbrancers, by mortgage or otherwise, have a claim, *in which case the mortgagee should retain the surplus, in trust for the proper parties, until their rights can be ascertained and adjusted*" (2 *N. Y. Practice* [*Tiffany & Smith*], 271).

And if he does so for a good (though unexpressed) legal reason, and especially if that reason be presumably known to the parties demanding the surplus, it cannot be assumed or presumed that he does so for a bad reason. His actions being right, is not made wrong by his failure to state the grounds of it. It being shown in the case that a good reason existed for his refusing to pay over the surplus, the burden of proof was thrown on the plaintiffs to show that the refusal was in fact based on a different reason.

Whatever, at the time of the demand made by them, or when this action was commenced, were the rights of the

Bevier agt. Schoonmaker.

plaintiffs under their judgment to so much of the surplus as would pay it, those rights were then not adjusted, were then disputed, and for all that the holder of the surplus could know, would be decided to be inferior to the rights of some other judgment creditor.

If Schoonmaker was bound to pay plaintiffs the amount of their judgment out of the surplus, and must now pay costs because he did not do so, it must be because said judgment was actually, not merely apparently, entitled to a priority over all other liens and claims; upon the same principle, if the plaintiffs' judgment proved to be void or voidable, as was claimed, he must pay costs to Severyn Hasbrouck, or John Winfield, or any other judgment creditor or claimant, who should establish his claim to the surplus, or part of it, in a suit brought therefor. And on the same principle, the instant the surplus was ascertained, and a demand made for it and refused, the action could be commenced and maintained. If so, then in every case of a statute foreclosure where there are rival claims to the surplus, the mortgagee or assignee must, on demand, instantly decide, and decide correctly upon the several claims, and pay over the money to the right party, at his peril, and is personally liable for costs if he fail to do so. This makes the costs follow the recovery, without any regard to the circumstances of the case, or the good faith of the party charged. Such a rule would, in numerous cases, unavoidably work great hardship and injustice; but under the rule we contend for, the innocent party could be protected, and the party acting in bad faith could yet be punished.

If Schoonmaker had paid the plaintiffs' judgment, and Severyn Hasbrouck had subsequently set it aside and established his claim, Schoonmaker would have to pay the money again out of his private- funds, and would not be protected by the fact that Hasbrouck's proceedings were not commenced when the payment to plaintiffs was made;

for at law it would be no defence, that he had paid the money to the wrong parties; and in equity he would be justly chargeable with collusion or bad faith, if, *having notice* of the invalidity of the plaintiffs' judgment, and notice of the intended proceedings to set it aside, he hastened to forestall the action of the court, by paying the money on an invalid judgment. The mere fact of *notice* would make him liable, independent of the question of collusion or bad faith. Must he pay costs, or be denied costs, because he declined to incur such a risk?

IV. The plaintiffs' rights under the sheriff's certificate, did not become perfect until October 6, 1863; Severyn Hasbrouck, or any other judgment creditor, might have acquired them without the consent of the plaintiffs, at any time within a month after the commencement of this action, and in that case some one of the defendants at the time of the trial of this action would have been absolutely entitled to a portion of the surplus moneys. Was not the action prematurely commenced?

V. The good faith of the defendant, Hiram Schoonmaker, is apparent from the whole case, and there is not a particle of evidence in the case to indicate bad faith on his part. Had he paid either of the claimants, it might have indicated bad faith towards the others, for he would thus, as far as was in his power, have deprived them of what a court might have awarded them, and unless himself were liable and responsible, might by payment to an eventually irresponsible claimant, have made the aid of a court unavailing.

VI. Under the facts in the case, the defendant, Hiram Schoonmaker, is not chargeable with interest. (*Tiffany & Bullard on Trusts and Trustees*, 597, 598, 599; *Minuse* agt. *Cox*, 5 *Johns. Ch.*, 441.)

VII. According to the rules and principles of equity, the defendant, Hiram Schoonmaker, should be allowed his costs out of the surplus moneys. It would be hard and unjust to compel him to pay even his own attorneys out of his own

funds. (1 *Vesey, Jr.*, 205, 246 ; *Rogers* agt. *Ross*, 4 *Johns. Ch.* 608, 609 ; *Morrell* agt. *Dickey* 1 *Id.* 153 ; *Tabele* agt. *Tabele, Id.* 45 ; *Minuse* agt. *Cox*, 5 *Id.* 441 ; *Robertson* agt. *Wendell*, 6 *Paige*, 320, 322, 323 ; *Spencer* agt. *Spencer*, 11 *Id.* 299 ; *Contant* agt. *Catlin*, 2 *Sandf. Ch.* 485.)

" It is a general principle that a trustee has a right to the protection of the court in the execution of his trust. He is, therefore, entitled to his costs, whether he comes before the court as complainant or defendant, unless the act required to be done leads to no responsibility, or his motive is obviously vexatious " (2 *Barb. Ch. Pr.* 329). " A trustee fairly before the court, whether as plaintiff or defendant, is entitled to his costs out of the fund " (1 *Van Santvoord's Eq. Pr.* 2d ed. 589).

VIII. If it be said that the court at the circuit exercised its discretion, and that, therefore, its action there should not be reviewed, we answer : 1st. That the decision being based on the idea that Schoonmaker held the surplus at his peril, virtually abnegated the discretionary power of the court. 2d. That such power in cases like this is not arbitrary, but is to be exercised according to the rules and principles of equity. 3d. That such power may as well be exercised at general term as at the circuit. The power of the court as to costs in such cases, is the same as that of the old court of chancery (*Code*, § 306 ; 2 *R. S.* 1*st ed.* 613, § 2 ; 2 *R. S. Edmond's ed.* 636, § 2), in which appeals were often taken on the question of costs alone, and the judgment of vice-chancellor on that question reversed or modified.

IX. The judgment should be reversed as to costs and interest, and the appellant should be awarded his costs of the action, including the costs of the appeal, out of the surplus moneys.

A. SCHOONMAKER, *for respondents and plaintiffs.*

I. The action as between the plaintiffs and the defendant, Hiram Schoonmaker, who brings this appeal, was for money had and received to the plaintiffs' use, which the defendant wrongfully refused to pay. The addition of the subsequent creditors as defendants, in no manner changed the character of the action as to the mortgagee. It only placed those creditors in a position where they must actively assert their rights, or afterwards remain silent. It could in no manner mitigate or condone the wrong of the mortgagee in withholding the plaintiffs' money, to bring before the court other parties suspected of complicity in the act. The plaintiffs sought no distribution of the fund among various and doubtful claimants, but demanded and were entitled to every dollar of it themselves, against all claimants.

II. The conceded and established fact that the plaintiffs were entitled to *all of the surplus money*, seems to dispose of the merely incidental and collateral questions brought up on this appeal. If the plaintiffs were entitled to the money, it was *wrong* for the defendant to withhold it. If the plaintiffs were entitled to the money, they were entitled to the use and possession of it; they were entitled to whatever benefit or profit might accrue to it, and as the defendant in fact enjoyed such benefit and profit, it was no more than simple justice that he should pay over the profit with the principal. He had no more right to the one than to the other.

The use of money is presumed to be worth the legal rate of interest. In this case the defendant by retaining the money probably doubled or trebled the whole principal He had the money during the enormous rise in stocks anb merchandise, and doubtless employed it so as to gain all possible advantages. It would seem strange that a man could thus speculate with the money of another and not be chargeable with interest for it. The law is not so lenient to wrong doers. And so with the matter of costs. It stands admitted that the defendant refused to pay the

Bevier agt. Schoonmaker.

money to the plaintiffs, or any part of it. The plaintiffs were therefore obliged to sue or lose their money. There would seem, therefore, to be no rational doubt that a recovery of the subject matter would entitle the successful party to costs. And more especially under the circumstances of this case. The defendant refused to pay, without assigning any reason or pretext for his refusal. He had not been forbidden by any one to pay it over. He was not requested to hold it. He did not offer to deposit it or pay it into court. He did not ask any indemnity. He simply made a flat refusal to pay, which was virtually claiming the money himself. He made no effort to protect himself. In *Lawton* agt. *Sager* (11 *Barb.*), it was decided that a party justly and equitably entitled to surplus moneys on a mortgage sale, is entitled to recover costs against the failing party who contests his right.

III. The plaintiffs were entitled to costs as matter of right under the Code. Section 304 provides, " *costs shall be allowed of course to the plaintiff* upon a recovery, in the following cases: Sub. 4. In an action for the recovery of money, where the plaintiff shall recover fifty dollars or more." This is an action " for the recovery of money." It was brought to recover money had and received to the plaintiffs' use. It falls, therefore, directly within the letter of this section.

The defendant cannot escape from the force of this section on the pretence that he is a trustee. No man can make a trustee of himself except at his peril. If he could constitute himself against our will a trustee of our money, and retain it indefinitely, then every attorney, agent or other person collecting money for another, can declare himself a trustee and keep the money forever. Even in foreclosures by action, the referee or sheriff making the sale cannot retain the surplus moneys for claimants to quarrel over it, but is required by rule 76 (*Supreme Court Rules*) to pay it over *within five days* to the treasurer of the county,

Bevier agt. Schoonmaker.

unless otherwise specially directed in the judgment. As this defendant was not a trustee, therefore, either by law or by act of parties, his attempt to become so *of his own wrong*, cannot shield him from costs.

IV. Section 306 of the Code provides as follows : "In *other actions* costs may be allowed or not, *in the discretion of the court*." The case then stands in this position : Either the plaintiff was entitled to costs as a matter of absolute right, or costs were allowable in the *discretion of the court*. If entitled as matter of right, this court cannot review the question. If discretionary, the discretion has been exercised by a competent and proper tribunal, and this court will not review the question. One or the other of these views must necessarily be taken, and either one is entirely fatal to this appeal.

No error having been committed on the trial, judgment should be affirmed with costs.

By the court, MILLER, J. The plaintiffs were clearly entitled to the surplus moneys which remained in the hands of Hiram Schoonmaker, upon the foreclosure sale, after the payment of his mortgage. This money certainly did not belong to Schoonmaker. The plaintiffs demanded it of Schoonmaker after the sale, and he refused to pay it to them, assigning no reason whatever for his refusal. Under such circumstances, an action could be maintained by the plaintiffs against Schoonmaker, for the money thus unlawfully retained. And unless some good cause is assigned for the refusal to pay the plaintiffs when the money was demanded, there is no substantial reason why the defendant, Schoonmaker, is entitled to costs out of the fund, or why the plaintiffs should not recover costs of the suit which his refusal to pay over the money compelled the plaintiffs to institute.

It is urged that the action was an equitable one, and comes within that class of cases where costs are allowed

Bevier agt. Schoonmaker.

to the defendant, payable out of the fund which is sought to be recovered. It is undoubtedly true that where there is a reasonable ground for contesting the claim of a party to a fund in the hands of another, the party holding it may bring and maintain an action in the nature of a bill of interpleader, for the purpose of settling the rights of the contestants between themselves. In the present case, if Schoonmaker held the moneys for the benefit of contesting claimants who were interested, I think he would be justified in refusing to pay until their rights were ascertained and adjusted. Nor would it alter his relationship to the contestants, because he happened to be sued before he had a fair opportunity thus to bring a suit for the proper disposition of the fund in his hands. He would stand in such an event precisely in the same position as if he had brought the suit himself. Before a party is entitled to avail himself of such a rule when he holds moneys belonging to others, he is bound when called upon for the money, to disclose the grounds upon which he claims to retain the moneys in his hands; when applied to by the lawful owner he is compelled to speak, and if he claims any such right, to state it, as a ground of his refusal to pay. He cannot remain silent, or simply refuse, and afterwards assert that he only claimed to hold the moneys because there was another claimant, and he did not know which was the rightful owner. When the money was demanded of Schoonmaker by the plaintiffs, he did not place his refusal upon any such ground. He gave no such reason. Had he done so, stating that there was contesting claimants, and that he was ready to pay as soon as their rights were settled, it would, no doubt, have altered very materially his position if a suit had afterwards been brought. It is quite possible that the difficulty alleged might have been obviated in a manner which would have been entirely satisfactory to the defendant, and the costs and delay of a litigation thereby averted. At any rate, Schoonmaker then would

have been in a condition to say that he had only retained the money for the purpose of discharging a duty he owed to all the parties who claimed an interest in the fund. As it stands, it appears that he refused absolutely, without making a particle of excuse at the time, thus forcing the plaintiffs to bring a suit to recover the money. After this suit was brought he made no offer to pay the money into court, or place it on deposit for the benefit of the parties interested, but interposed an answer, thereby increasing the expenses of obtaining the money, and in the meantime retaining the money in his own hands, for his own use and benefit. None of the judgment creditors appeared to contest the claim, and if he had simply desired to relieve himself from costs, I incline to think he could have done this by an appearance on the motion to the court for relief, without the delay incident to the interposition of an answer.

Conceding to Schoonmaker all that is claimed by his counsel, and the correctness of his position in a case where he had been free from fault, yet I think it must be admitted that he made a mistake in giving no reason for retaining the money when demanded of him by the plaintiffs, and that under such circumstances he retained it at his peril. Even if this were a case where the court was authorized to exercise a discretion as to the costs under the Code (§ 306), I am not prepared to say that such discretion has not been fairly exercised by the judge who tried the cause. There was no absolute refusal; no appearance by any party to contest the plaintiffs' claim; and a judgment in favor of the plaintiffs, which was first in priority.

Was he entitled to costs which had been caused by his own act and conduct? Was he entitled to the use of the money when he could have paid it into court? Costs in cases of this character are not always chargeable upon the fund, and the parties who fail should usually bear the consequences of a defeat (*Lawton* agt. *Sager*, 11 *Barb.* 349). My opinion is that Schoonmaker has no claim for relief

against costs, and no ground for claiming that the costs should be paid out of the fund, or that he should not be charged with interest on the money held by him. The point was not taken on the trial, that the action was prematurely brought, and, I think, if it had been, would not have availed the defendant.

After a careful examination of the points taken by the defendant's counsel, I discover no error committed on the trial, and think the judgment should be affirmed, with costs.