## JONATHAN M. RIDENOUR
### v.
## CHARLOTTE M. SHIDELER ET AL.

1. SALE UNDER SEVERAL EXECUTIONS.—Whether a sheriff holding several executions against the same defendant may sell under them all at once, the court do not decide; but under the circumstances in this case, a sale under the first execution passed all the property to the purchaser, irrespective of anything attempted to be done under the others; the property brought the same price as though no attempt had been made to sell under the junior executions, and no one has been prejudiced by the irregularity.

2. SALE IN PARCELS.—The language of the statute seems to make it imperative that where property is susceptible of division, it should be sold in separate tracts, but before the court would be warranted in setting aside a sale *en masse* for that reason, it must appear that the property was susceptible of division.

3. JUNIOR JUDGMENTS — LIEN TRANSFERRED TO FUND.— By a sale under the senior judgment, the junior lie..s, so far as the land is concerned, were cut off; but the liens thus extinguished were transferred to the fund thereby created, and were entitled to payment therefrom in the order of their priority.

4. PRIORITY OF LIENS.—Judgment for $150.85 was recovered against

Ridenour v. Shideler.

appellee S., which became a valid first lien on lots 25 and 26. Shortly after, S. borrowed $500, and secured the same by deed of trust to appellant as trustee, upon lot 25. After the execution of this trust deed, several judgments in attachment suits were rendered against appellee S. and executions issued upon all of them. Sale was made upon all the executions at once, and both lots sold *en masse*, a junior execution creditor becoming the purchaser for $2,000, which sum was afterwards distributed among the several judgment creditors in the order of their priority. *Held*, that the proceeds of lot 25 should have been applied, at least after paying the first judgment, to the satisfaction of the deed of trust. The second and third judgments being junior liens, must be considered as paid out of the proceeds of lot 26.

5. POWER OF COURT OF EQUITY TO FOLLOW FUND.—Where the surplus out of which complainants were entitled to have satisfaction of their trust deed, can be traced to the hands of the defendants, a court of equity will follow it and compel them to return it to the party to whom it rightfully belongs.

6. PARTIES—TRUSTEE AND CESTUI QUE TRUST.—In proceedings of this character, where the validity of a trust deed is called in question, the trustee is not a proper representative of the *cestui que trust*. He is undoubtedly a proper party, but the *cestui que trust* is also a necessary party.

APPEAL from the Superior Court of Cook county; the Hon. S. M. MOORE, Judge, presiding. Opinion filed February 4, 1880.

Messrs. LAWRENCE, CAMPBELL & LAWRENCE, for appellant; as to the sufficiency of tender in a bill in chancery, cited Webster v. French, 11 Ill. 254; Board Sup'rs v. Henneberry, 41 Ill. 180.

Executions are to be enforced and satisfied in the order of their priority: Rorer on Judicial Sales, § 740; Harrison v. Stipp, 8 Blackf. 455; Tabb v. Harris, 4 Bibb, 29; Knox v. Webster, 18 Wis. 430; Rust v. Prichett, 5 Harr. 260.

Equity will treat the money derived from the sale of property as it would the property before sale: Casy v. Gaty, 15 Ill. 190.

A junior judgment creditor cannot strengthen his rights by purchasing a senior judgment, so as to cut off an intervening mortgage: Wise v. Shepherd, 13 Ill. 41.

The lots should have been sold separately: Morris v. Robey, 73 Ill. 462; Rev. Stat 1874, Chap. 77 § 12.

As to rule for construction of statutes: Maus v. L. P. & B. R. R. Co. 27 Ill. 77.

Messrs. BANNING & BANNING, for appellees; that the mortgage lien was extinguished by the sale, cited Herman on Executions, 362.

The sale under the three executions was proper: Rorer on Judicial Sales, § 742; Herrick v. Graves, 16 Wis. 157.

Appellant could not have enjoined the sale because no injunction was prayed for in the bill: Story's Eq. § 863; Eden on Injunctions, 73; Primners v. Patten, 32 Ill. 528.

An actual tender was necessary to entitle appellant to an injunction: Kerr on Injunctions, 193; Joyce on Injunctions, 1161; Tooke v. Newman, 75 Ill. 217; Sloan v. Coolbaugh, 10 Iowa, 35.

The grounds on which a sale can be vacated must exist at the time of sale: Rorer on Judicial Sales, § 1114; McCullen v. Hubbert, 13 Ala. 295.

The sale cannot be set aside except upon condition that appellant repay the purchase money: Rev. Stat. 1877, Ch. 77, § 25; Rorer on Judicial Sales, § 1136.

Appellant should not be allowed to foreclose his trust deed and thus complicate and cloud Funk's title: Christie v. Hale, 46 Ill. 122; Groves v. Webber, 72 Ill. 607.

As to jurisdiction: Reed v. Tegler, 56 Ill. 291; Hodgen v. Guttery, 58 Ill. 438.

BAILEY, P. J. This was a suit in chancery, involving a controversy between the holders of several successive liens on certain lots of land in Cook county. The facts not admitted by the pleadings are agreed to, and appear in the record by stipulation. On the 4th day of April, 1876, Graham Bros. & Co. brought their suit against Isaac M. Shideler and others, in the Superior Court of Cook county, by attachment, and levied their writ on said Shideler's interest, in lots 25 and 26 in a certain subdivision in said county, and on the 11th day of May, 1876, a judgment was recovered in favor of the plaintiffs in said attachment suit, for $150.85 and costs. At the time of the commencement of this suit, the title to said lots stood in the name of said Shideler's wife, by virtue of a conveyance which was subsequently decreed to be fraudulent, and void as to Shideler's creditors. This judgment both appears, and is admitted to be, the first lien on said lots.

On May 27, 1876, Charlotte M. Shideler, in whom the title then stood, and said Isaac M. Shideler, her husband, made their promissory note for $500, payable ninety days after date, to the order of one Barnard, and to secure said note, executed to Jonathan, M. Ridenour, as trustee, their deed of trust conveying said lot 25, said deed of trust being recorded June 5, 1876. Said note, on the day of its date, was assigned to the Central Bank of Indiana, and it is admitted that said bank thereby became a *bona fide* holder thereof for value, and still holds and owns the same.

On the 5th day of October, 1876, Porter Graham and others, brought suit against said Isaac M. Shideler and another in the Superior Court, by attachment, and levied their writ on both of said lots, and on the 3d day of November, 1876, judgment was rendered in said suit in favor of the plaintiffs for $102.93 and costs.

On the 9th day of January, 1877, Omar Tousey and another brought suit against said Shideler and others in said court, by attachment, and levied their writ on both of said lots, and on the 4th day of April, 1877, judgment was rendered in that suit in favor of the plaintiffs for $491.15 and costs.

On the 22d day of January, 1877, an attachment suit was commenced in the same court by John Funk and Henry J. Funk against said Shideler and others, and a levy made on both of said lots. Judgment was recovered in this suit on the 13th day of March, 1877, in favor of the plaintiffs therein for $1,760.-36 and costs.

After the recovery of these several judgments, bills in chancery were filed by the respective plaintiffs therein, praying that the title to said lots be decreed to be in said Isaac M. Shideler, and the cloud thereon created by said deed to his wife be removed, and said lots subjected to the payment of said judgments. Said suits were afterwards consolidated, and on the hearing a decree was entered in accordance with said prayer, declaring said deed to be fraudulent, as above stated, and directing the sale of said lots, as the property of said Isaac M. Shideler, for the satisfaction of said judgments. To these proceedings said Ridenour and the Central Bank were not parties.

Special writs of execution were afterwards issued on said judgments, and delivered to the sheriff of Cook county, who, thereupon, advertised said lots for sale on the 3d day of September, 1877. The plaintiffs in the attachment suits having refused to enter into an agreement with the holders of the deed of trust to sell lot 26, not covered by the deed of trust, before offering the other lot for sale, Jonathan M. Ridenour, the trustee, filed the original bill herein, making all the parties to said several judgments defendants, and praying for a decree marshaling the securities as between himself and the defendants, and requiring the plaintiffs in the said senior judgment to sell said lot 26 under their execution before offering said lot 25 for sale. The bill further prayed that the other judgments might be declared to be liens subsequent to said deed of trust, so far as concerned said lot 25; and offered to bid for said lot 26 the amount of said senior judgment, and to bring the money for that purpose into court. There was also a general prayer for relief.

On the 1st day of September, 1877, the day of the filing of the bill, the plaintiffs in the senior judgment, and also John and Henry Funk, as well as some of the other defendants, came and entered their appearance. On said 3d day of September, 1877, while said bill was thus pending, the sheriff proceeded to sell said lots under his previous advertisement. In making such sale, lot 26 was first offered separately, and no bids were made therefor. Lot 25 was then offered in the same manner, and no bids were made. Both lots were then offered together, and sold to said John Funk for $2,000, that sum being the highest sum bid. Said sale was made in this manner on all of said executions at once. A certificate of sale was thereupon issued to said John Funk, entitling him to a deed on the 3d day of December, 1879, and on December 3, 1879, a sheriff's deed was issued to him and duly recorded.

On making said sale, the sheriff, in pursuance of an order of the Superior Court entered in said attachment suits on the day of the sale, after deducting his own costs, applied the proceeds of the sale as follows: to Graham Bros. & Co. the amount of the two Graham judgments; to Omar Tousey et al., $200; and to John and Henry Funk the balance, viz., $1,464.32.

Ridenour v. Shideler.

It is admitted that lots 25 and 26, at the time of said sale were and still are of equal value, and that both are vacant and unoccupied. It was further stipulated that this case might be decided, in view of all that had transpired since the filing of the bill, in the same manner as though a supplemental bill had been filed after the proceeds of the sheriff's sale had been paid over by him, but before the time of redemption had expired, praying for the payment of complainant's lien out of the proceeds of the sale after paying the amount of said senior judgment. It was also stipulated that defendant Funk might have such affirmative relief as he might be entitled to if he had filed a cross-bill after receiving the sheriff's deed, praying for the setting aside of complainant's deed of trust as a cloud upon his title.

Upon the hearing the court below entered a decree dismissing the original and supplemental bills, and also the cross-bill of Funk. Both the complainant and said Funk have assigned errors.

The appellant, the complainant below, questions the validity of the sheriff's sale, on the ground that it was made on all the executions at once, whereas, as he insists, sales should have been made on said executions separately, in the order of their priority. The authorities upon the question of the power of a sheriff holding several executions against the same defendant to conduct a sale under them all at once, are conflicting ; but, as we view the case, we do not feel called upon to decide whether he may properly do so or not. There can be no doubt of his power to sell under the oldest execution, and even though an attempted sale under the others at the same time may be invalid, it does not follow that the sale under the senior execution may not be upheld. Under that writ all the property in this case was sold, and we see no reason why the title of the purchaser may not be valid, entirely irrespective of anything attempted to be done by virtue of the other executions. So far as appears, the sale was conducted in the same manner and the property brought the same price as though no attempt had been made to sell under the junior executions. No one can have been prejudiced by the irregularity, if it was such, and it

furnishes, in our opinion, no ground for setting aside the sale.

Appellant further insists that the sale was invalid because the property was not sold in parcels. It is claimed that under Sec. 12, chap. 77, R. S. 1874, property susceptible of division must be sold in parcels, and that sales in any other manner are, under all circumstances, prohibited. It cannot be denied that the phraseology of the present statute is somewhat different from that of the corresponding section of the Revised Statutes of 1845. The language seems to make it imperative that where property is susceptible of division, it should be sold in separate tracts. Before we can be warranted in setting aside the present sale on this ground, however, it must appear that the property sold was susceptible of division. The numbers of the lots being consecutive, we may fairly presume that they lie adjacent to each other, and constitute one body of land. Their size, situation and condition are not shown. The only evidence of the divisibility of the property grows out of the fact that on the plat it is subdivided into two lots. It may, nevertheless, so far as appears, be incapable of division for purposes of sale. Such division may greatly diminish its value. That such is the case may be inferred from the fact that when offered for sale by the sheriff separately no bids could be obtained. We would not be understood as expressing any opinion as to whether, under the present statute, sales of property susceptible of division may not, under some circumstances, be made in bulk. We are only disposed to hold that in the present case it does not appear with sufficient certainty that the property in question is in fact susceptible of division to justify setting aside the sale, even though the construction of the statute contended for should be held to be the correct one.

Assuming, then, that the sale was valid, a more important question arises as to the rights of the various lien-holders in the proceeds of the sale. By the sale under the senior judgment, the junior liens, so far as the land was concerned, were cut off and extinguished. But upon well recognized principles of equity, the liens thus extinguished were transferred to the fund thereby created, and were entitled to payment therefrom in the order of their priority.

In Douglass' Appeal, 48 Penn. St. 223, the court say: " In the distribution of the proceeds of a sheriff's sale, the rights of those claiming to participate, are to be determined as they were at the time time the sale was made. Such a sale divests whatever liens are upon said lands at the time, and the lien-holders are turned over to the proceeds."

So in Fry's Appeal, 76 Penn. St. 82, they say: " In the distribution of money raised by the sheriff's sale of real estate, the costs of sale should be first paid, and the residue of the fund be applied on the liens divested by the sale, according to their priority.

In Clarkson v. Skidmore, 46 N. Y. 297, a question arose as to the distribution of the surplus proceeds arising from a sale under a foreclosure of a mortgage, and the court say: ".The effect of the sale was to substitute the proceeds, so far as they would go, for the several interests in the land sold, but not to change the relative interests of the parties or their priorities; and neither of them is entitled, out of the proceeds, to more than the equivalent of what he would have enjoyed had the sale not taken place."

In Averill v. Loucks, 6 Barb. 470, it was held that where land is sold under a judgment, and the surplus moneys are brought into court, creditors having liens upon the land subsequent to the judgment have the same liens upon the surplus moneys which they previously had upon the land. Their liens are transferred to the surplus, and such surplus must be applied in discharge of the liens, according to the order of their priority. See, also, Habersham v. Bond, 2 Georgia Decis. 46; Bartlett v. Gale, 4 Paige, 181; Snyder v. Stafford, 11 Id. 71; Purdy v. Doyle, 1 Id. 558; Bevier v. Schoonmaker, 29 How. Pr. 411; Brewster v. Cropsey, 4 Id. 219; Matthews v. Duryee, 45 Barb. 69.

This same question was carefully considered by our Supreme Court in Hart et al. v. Wingart, 83 Ill. 282. In that case, after a judgment creditor had sold land under his execution and received a sheriff's certificate, and after the expiration of the twelve months during which the judgment debtor might redeem, but before the expiration of fifteen months from the

sale, the land was sold under a prior deed of trust and a sufficient amount realized to pay the deed of trust, and leave a surplus considerably more than sufficient to cover the amount of the bid at the execution sale and ten per cent. interest. The trustee, after notice of the rights of the execution creditor, and after demand by him for said surplus, paid all of said surplus over to said judgment debtor. It was held that the lien of the holder of the sheriff's certificate, although cut off and extinguished by the trustee's sale, so far as the land was concerned, was transferred to the surplus arising out of the sale, and that he was entitled to be paid out of said surplus the amount of his bid and ten per cent. interest, the residue going to the execution debtor.

Applying these principles to the present case, how should the proceeds of the execution sale have been distributed? The amount bid was $2,000, and as it is admitted that the lots were of equal value, $1,000 of that sum must be deemed to have been realized from the sale of lot 25, covered by the complainant's deed of trust. With the distribution of the proceeds of the other lot the complainant has no concern, except that it may be claimed that the prior judgment ought to have been fully satisfied out of that fund. As the amount realized out of lot 25, however, is apparently sufficient to satisfy both the first judgment and the deed of trust in full, it is not necessary for us to consider that question.

It is manifest that the sheriff should have applied the proceeds of lot 25, at least, after paying the first judgment, to the satisfaction of the deed of trust. Instead of doing this, he seems to have paid the whole over to John and Henry Funk. The amount received by them was $1,464.32. This was the entire $2,000, less the amount of the first and second judgments and $200 paid on the third, and costs of sale. The second and third judgments, being subsequent liens, must be deemed to have been paid out of the proceeds of the other lot. If the first judgment is to be considered as paid out of the proceeds of lot 26, then the Funks have in their hands the entire amount realized fro.1 the sale of lot 25. If that judgment is to be satisfied out of lot 25, then they have the entire proceeds of that

Ridenour v. Shideler.

lot less the amount of that judgment.  This clearly traces into their hands the entire surplus out of which the complainant's lien should have been satisfied.  As this money has been paid into their hands in defiance of the superior equity of the complainant, a court of equity will follow it, and compel them to restore it to the party to whom it justly belongs.

It is true, the payment was made to the Funks in pursuance of an order of court made in the attachment proceedings.  The complainant, however, was not a party to those proceedings, and his rights cannot be concluded thereby.  As the sheriff is not a party to this suit, such order may, perhaps, be a protection to him, but it constitutes no barrier in the way of following the fund into the hands of the Funks, and requiring them to pay it over.  They must be treated as having received it in trust for the party equitably entitled thereto.

Nor do we see any obstacle growing out of the fact that under the stipulation of the parties the supplemental bill is not deemed to have been filed until after the distribution of the money by the sheriff.  It is true, a party claiming an equity of this character must assert it with reasonable diligence, but we are unable to perceive any evidence of laches on the part of the complainant.  The original bill was filed two days before the sale.  The order of distribution was obtained on the very day of the sale ; and, although the record is silent on that point, it may fairly be presumed that the distribution was made very soon thereafter.  We do not think that the complainant's rights were foreclosed by his failing to file his supplemental bill in the interval between the sale and the distribution.

It should also be observed that the Funks were parties to the original bill and had voluntarily come and entered their appearance before the sale took place.  They thus had full and actual notice of the complainant's equities.  It is perhaps questionable, also, whether the complainant was not, under his original bill, entitled to all the relief he can in any way obtain in this suit.

It is manifest from what has already been said, that there was no error in dismissing the cross-bill of defendant Funk.

Even if a purchaser under a prior incumbrance can, under any circumstances, come into court and ask to have a junior incumbrance set aside as a cloud on his title, which we very much doubt, it would certainly be an extraordinary application of equitable principles to order the cancellation of such junior incumbrance while the purchaser holds in his hands the very funds out of which the junior lien-holder is entitled to have his lien satisfied.

We are compelled to say, in conclusion, that we have been very considerably embarrassed in the consideration of this case, by what seems to us to be a manifest defect of parties. The only person who has come into court to assert any rights under the deed of trust is the trustee. The party secured is not before us. The deed of trust, it is true, is not set out in the record, and so we are not apprized of the exact nature and extent of the trust vested in the trustee. It is, perhaps, fair to presume, as their is no suggestion to the contrary, that it is similar in its provisions to those in ordinary use, where the land is conveyed to the grantee in trust, with a power, in case of default in the payment of the money secured, to advertise and sell the land and apply the proceeds to the payment thereof.

Not only do we think that the holder of the note is a necessary party, but we deem it doubtful whether the trustee is a proper representative of the *cestui que trust* in a litigation of this character. The trustee is undoubtedly a proper party, but the party secured should also have appeared as complainant. It was held by the Supreme Court in Scanlon v. Cobb, 85 Ill. 296, and by this court in Bayard et al. v. McGraw et al. 1 Bradwell, 124, and in Clark et al. v. Manning et al. 4 Id. 649, that the trustee has the mere naked legal title, with the duty to sell on default of payment, and that the party secured is a necessary party to any suit by which the security is to be affected.

But as no point has been made by the appellees either in this court, or, so far as we are aware, in the court below, as to any defect of parties, we are not disposed to place our decision of the case on that ground, but reverse the decree upon the grounds

hereinbefore stated, with leave to the complainant, if he sees fit so to do to amend his bill by making his *cestui que trust* a party, and for other proceedings not inconsistent with this opinion.

Decree reversed.