### HYMAN v. HAUFF et al.

### In re ROGERS.

(Common Pleas of New York City and County, General Term. February 6, 1893.)

1. MORTGAGE LIENS—PRIORITY.

    The contract collateral to a mortgage given to secure the payment for materials to be furnished for buildings to be erected on the mortgaged premises provided that, in case any lien or incumbrances should be placed on the premises during the performance of the contract, the mortgagee might cease to deliver materials thereunder, and thereupon the mortgage should become due, to the extent of the materials then delivered. *Held,* that the cessation in the delivery of materials because of the filing of certain liens against the premises did not affect the priority of such mortgage as to all the materials subsequently delivered, over a junior mortgage, where the materials were furnished pursuant to the contract after a removal of such liens.

2. REFERENCE—WHO LIABLE FOR COSTS ON.

    On a reference for the trial of several claims to a fund, it is proper to charge the unsuccessful claimant with the entire costs of the reference.

Appeal from special term.

In the action of Henry Hyman against Anna Hauff and others for the foreclosure of a mortgage, James Rogers and others filed claims to the surplus fund. Reference was had to try the claims, and determine their priority; and, from the judgment on report of the referee, James Rogers appeals. Affirmed.

Argued before BOOKSTAVER, BISCHOFF, and PRYOR, JJ.

Thomas A. Rogers, (Vedder Van Dyck, of counsel,) for appellant Rogers.

Tallmadge W. Foster, for respondents Lee and others.

Thomas C. Ennever, for respondents Cassidy & Adler.

BOOKSTAVER, P. J. In December, 1890, Muller & Hauff, the owners of seven lots of land subject to mortgage, commenced to construct seven buildings thereon. They first made a mortgage to the plaintiff to secure moneys to be advanced upon the buildings as they progressed. Then they made contracts with various parties for furnishing materials and work upon the houses, among others—First, with the Lorillard Brick-Works Company, for supplying brick; second, with the Buffalo Door & Sash Company, for supplying woodwork and trim; third, with Cassidy & Adler, for plumbing work; and fourth, with Michael McCormack for plastering. To secure these contracts they made their bonds to each for the amount of their several contracts, and gave mortgages upon the buildings to be erected to secure the same. The mortgages were recorded in the order of their making. On this proceeding each of these claims was proved and found by the referee to be due; and the sole question raised on this appeal is whether or not the defendant Rogers had a right to share with the Buffalo Company and with Cassidy & Adler in the $4,000 balance of surplus remaining in court after payment under the order of October 26, 1892, of the costs of reference, and $12,200 to the Buffalo Company, and $4,596.02 to Cassidy & Adler, on account of their claims.

The facts relating to this question are as follows: The Buffalo Company's mortgage was dated December 16, 1890, and was recorded December 22, 1890. It was given nominally to secure a bond of even date, but in reality to secure their contract with Muller & Hauff for payment for doors, sash, and other trim for the seven houses. The contract provided that the company was to be paid the amount of the contract in seven payments, the 1st, 2d, 3d, 4th, and 5th of which were to be $1,100 each, in cash, when materials to the amount of said payment should have been delivered, and the 6th by a payment of $4,700 in cash on or before March 16, 1891, and the further sum of $6,500 on a bond and mortgage upon three of the completed houses when the proposed permanent loan was secured, whereupon the mortgage under consideration was to be canceled. The seventh clause of this contract contained the following provision:

"It is further agreed that in case any lien or incumbrance of any kind shall be filed or docketed against or placed upon the said premises. or any part thereof, during the performance of this contract, the parties of the first part may, at their

option, cease to deliver materials hereunder; and unless such lien or incumbrance shall be discharged of record within ten days the said bond and mortgage shall thereupon become due and payable, to the extent of the materials which shall then have been delivered."

The claim of the appellant is based upon two mortgages for $1,500 each given by Muller & Hauff to Michael McCormack to secure the payment for materials and work to be furnished and performed by McCormack on the mortgaged premises, which mortgages were assigned by McCormack to Rogers by an assignment recorded February 20, 1891, one of which covered the easterly 75 feet of the premises out of which the surplus arose, and the other the westerly 100 feet of said premises. The first of these mortgages contained the following clause: "Subject, however, to prior mortgages covering the said premises, and the four lots on the westerly side thereof, not exceeding in the aggregate the sum of $144,700,"—and the second containing the following clause: "Subject, however, to prior mortgages now thereon, (which mortgages also cover the three lots on the easterly side of said premises,) not exceeding in the aggregate the sum of $144,700." At the time of the execution and delivery of these mortgages the premises affected thereby were subject to mortgages amounting in the aggregate to $139,700 on the three houses and lots, and $143,700 on the four houses and lots, being less by $1,000 than the amount mentioned in the McCormack mortgages. After proceeding for a time the Buffalo Company suspended deliveries under their contract because of the filing of certain liens against the premises, and declined to proceed further until those liens were subordinated to theirs. Thereafter all of these lienors, including McCormack, signed an agreement subordinating their liens to the Buffalo Company's mortgage; but at that time his mortgages had been assigned to Rogers, the appellant herein, and the assignment duly recorded. The referee finds as a fact that the Buffalo Company thereafter duly performed all the conditions of the contract on their part, and carried it to completion.

But appellants contend that notwithstanding this, inasmuch as at one time there had been a determination on the part of the Buffalo Company not to continue the contract, and that by reason thereof, the McCormack lien came in ahead of what was done after that time. The first answer to this is that no one but parties to the contract can take advantage of a breach of condition, and the rights and liabilities are confined to them, and their privies. The well-recognized exceptions to this rule which permits strangers to have standing in court do not cover this case. Lawrence v. Fox, 20 N. Y. 268; Gibert v. Peteler, 38 N. Y. 165. When such stranger does not change his position, and his rights, as originally existing, have not been prejudiced by a breach of the conditions of such contract, he will not be heard to complain of such breach, when the party for whose benefit the covenant was made chooses not to take advantage of it. But even if the junior incumbrancer has such a stand, as to the contract, as to raise this question, still the finding must be against him, because both McCormack and Rogers are precluded from raising it, for the reason that the McCormack mortgages assigned to Rogers were in terms taken, given, and transferred subject to the

Buffalo Company and the Cassidy & Adler lien, amounting in the aggregate to the sum of $24,200; for, as before stated, the McCormack mortgages contained a claim subjecting them to prior mortgages not exceeding $144,700, which includes the two before mentioned, and this, we think, must be regarded as an express assent to the lien of these two mortgages, independently of the subsequent agreement of subordination. Besides, the McCormack mortgages were made and filed subsequent to the Buffalo Company and Cassidy & Adler mortgages. In any event there was an actual waiver by Muller & Hauff of any election to call the principal or any part of the Buffalo Company's mortgage due. They alone had the right to elect whether or not the Buffalo Company's mortgage should become due on cessation of delivery; and, if this election had been made, they had a right to waive such election, and, having done so, the subsequent mortgagees cannot complain. This being the case, there can be no doubt that the owners of the equity of redemption would have been estopped from raising the claim now made by Rogers; and we think, if it is estopped by it, as he is privy with Muller & Hauff, he also will be estopped. Parties to a mortgage may by agreement extend payment without losing priority over inferior lienors. In 4 Jones, Mortg. § 373, the learned author says:

"Notwithstanding all the distinctions and refinements which have been introduced into the law of this subject by the many conflicting adjudications upon it, there is strong reason and authority for the rule that a mortgage to secure further advances, which on its face gives information enough as to the extent and purpose of the contract so that any one interested may, by ordinary diligence, ascertain the extent of the incumbrance, whether the extent of the contemplated advances be limited or not, and whether the mortgagee be bound to make the advances or not, will prevail over the supervening claims of purchasers or creditors, as to all advances made within the terms of such mortgage, whether made before or after the claims of such purchaser or creditor arose, or before or after the mortgagee had notice of them."

Pomeroy, in his Equity Jurisprudence, (section 1199,) citing the cases of Witczinski v. Everman, 51 Miss. 841, and other cases, says that—

"They maintain the mortgagee's supremacy, and preserve the lien of his mortgage against intervening subsequent incumbrances, even for advances made after receiving actual notice of such incumbrances. This conclusion is based upon the doctrine that the executory agreement of the mortgagee creates a full and perfect lien in equity, effectual against all persons who are charged with notice thereof, and that the record of the mortgage furnishes such a notice, affecting all subsequent incumbrances."

And in a note to the same section he says:

"I would venture to express the opinion that they are based upon the true principle, and formulate the correct doctrine involved in and derived from the generally accepted construction of the American recording acts."

Indeed, any other rule would work inextricable confusion, where there were several mortgages for future advances on the same property, each containing a provision for allowing the mortgagee to discontinue his advances at his option; for the contention in such cases would be changed from the time of making and recording the liens to when the goods were actually delivered, and one would have to keep an account of the day, hour, and minute of each delivery, and we would have a cartload of doors and sashes taking precedence over a cartload of brick,

or vice versa, and so on throughout the entire time of the performance of the contracts. This would be intolerable, and would keep the courts constantly busy settling such controversies between rival claimants.

But, again, neither Rogers nor McCormack changed their position on the faith of the conduct of the parties at the time of, or subsequent to, the alleged discontinuance or election, nor were their rights in any way prejudiced thereby, as they intended to and did take subject to the Buffalo Company's lien, as well as the Cassidy & Adler lien, to their full amounts, respectively.

Finally, it appears that McCormack, in April, 1891, entered into an agreement with the Buffalo Door & Sash Company, subordinating his two mortgages to theirs. It is claimed, however, that this agreement was of no effect, because at the time it was made McCormack had already assigned his two mortgages to Rogers, the claimant herein, and they were then held by him. The Buffalo Door & Sash Company, however, had no actual notice of this assignment, and the record of the assignment was not notice to them. Ackerman v. Hunsicker, 85 N. Y. 43. The assignment, moreover, was not absolute, but as collateral security. The agreement, therefore, with McCormack subordinating his mortgages to theirs, he being the apparent owner of the mortgages, and the equitable owner as well, and the Buffalo Door & Sash Company having no notice of the assignment to Rogers, was binding. Besides, the priority of the McCormack mortgages is technical, and has no equity to support it. Every dollar of advance made by the Buffalo Company under their mortgage was in material which actually went into the construction of the buildings upon the mortgaged premises, and increased their value, as must have been contemplated by McCormack when he took his mortgages subject to the prior mortgages. The advances made by them, therefore, actually produced this surplus as far as they went; and equity requires that such surplus should be applied to repay those advances, rather than to pay a claim subsequent in date, inferior in legal rank, and which has no superior equity to commend it.

Rogers specifically appeals from that portion of the order which directs him to pay to Cassidy & Adler $563.62, the amount of the referee's fees and disbursements. This it had power to do. Lawton v. Sager, 11 Barb. 349; Bevier v. Schoonmaker, 29 How. Pr. 411–422; Hall v. Macdonald, 105 N. Y. 667. There is no opinion as to this last case, but it was an order affirming the order of general term of this court, which directed the unsuccessful claimant to pay expenses of the reference. In this case, if the appellant is not charged with the costs of the contest before the referee, we will, in effect, charge the successful party with the costs of the litigation, which would be inequitable. The order should therefore be in all respects affirmed, with costs of this appeal.